IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SHARON K. BOOTHE                                                                                          PLAINTIFF

      v.                                             CIVIL NO. 08-5007

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                         DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Sharon K. Boothe brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**      **Procedural Background:**

Plaintiff protectively filed her current application for DIB on February 12, 2004, alleging an inability to work since July 6, 1997, due to a sleep disorder, diabetes, depression, anxiety, carpal tunnel syndrome, fibromyalgia, emphysema, chronic obstructive pulmonary disease (COPD), and attention and concentration difficulties.[1] (Tr. 17, 184-186). For DIB purposes plaintiff maintained insured status through December 31, 2002. (Tr. 17). An administrative hearing was held on March 29, 2006. (Tr. 426-472).

---

[1] Plaintiff filed previous applications for DIB and SSI on October 9, 1999, alleging an inability to work since July 6, 1997. (Tr. 46). Those applications were denied at the initial and reconsideration level on December 20, 1999, and July 14, 2000, respectively. (Tr. 36, 41). Plaintiff requested a hearing on July 21, 2000, but later withdrew that request on August 14, 2000. (Tr. 42, 45, 152). Thus, the relevant time period for the current application is July 15, 2000, through December 31, 2002.

AO72A
(Rev. 8/82)

By written decision dated July 25, 2006, the ALJ found that during the relevant time period plaintiff had an impairment or combination of impairments that were severe. (Tr. 19). However, after reviewing all of the evidence presented, he determined that plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 22). The ALJ found plaintiff retained the residual functional capacity (RFC) to perform sedentary work. (Tr. 22). Specifically, the ALJ determined plaintiff could lift/carry up to ten pounds occasionally, and less than ten pounds frequently, push and/or pull within those limitations, stand and/or walk for a total of at least two hours in en eight-hour workday and sit for a total of about six hours in an eight-hour workday. In addition, the ALJ found plaintiff must avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation; and that plaintiff would not be able to engage in a job that required driving. With regard to mental limitations, the ALJ found plaintiff was able to perform work where interpersonal contact is incidental to work performed, where complexity of tasks is learned and performed by rote with few variables and little judgment and where the supervision required is simple, direct and concrete. (Tr. 22). With the help of a vocational expert, the ALJ determined plaintiff could perform other work as a machine operator and an assembler. (Tr. 27, 232-233).

Plaintiff then requested a review of the hearing by the Appeals Council, which denied that request on October 30, 2007. (Tr. 6-9). Subsequently, plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. 8, 9).

## II. Evidence Presented:

At the time of the administrative hearing on March 29, 2006, plaintiff was fifty-two years of age and retained a seventh grade education. (Tr. 26, 428-29). Plaintiff also earned her general equivalency diploma (GED). (Tr. 62, 184, 206). The record reflects plaintiff's past relevant work consists of work as a machine deburrer and a bandsaw operator. (Tr. 26). At the March 29, 2006, administrative hearing, plaintiff testified she tried to work about a year ago for the Dollar Store. (Tr. 429).

The pertinent medical evidence during the relevant time reflects the following.[2] Progress notes dated November 24, 2000, report plaintiff's complaints of a three week history of being sick with sinus congestion, a cough, sore throat, drainage and diarrhea. (Tr. 274). Plaintiff reported she smoked two to three packages of cigarettes a day. Plaintiff reported she was not taking any of her prescribed medication. After examining plaintiff, Dr. Malone diagnosed plaintiff with tobacco abuse, elevated blood pressure today, viral illness, hormone deficiency (Estrogen) and stress incontinence. Dr. Malone gave plaintiff two months of samples of Prempro and samples of PanMist DM. Plaintiff was also given a prescription of Doxycycline. Plaintiff was to return in six weeks or sooner as needed.

Progress notes dated March 19, 2001, report plaintiff's complaints of a cough and sore throat for the past two days. (Tr. 273). Plaintiff reported she had been on both Serevent, Proventil and inhaled corticoid steroids in the past. Ms. Sheila Howerton, R.N., F.N.P., noted plaintiff was a smoker with known COPD. Ms. Howerton assessed plaintiff with URI,

---

[2]Prior to the amended alleged onset date and subsequent to the date last insured, plaintiff sought treatment for many of the impairments she sought treatment for during the relevant time period. Those records will be addressed as the pertain to the application currently before this court.

Bronchitis in a smoker. Plaintiff was given samples of Levaquin and Serevent, as plaintiff did not have the financial means to purchase this medication. Plaintiff was given a prescription for Proventil. Mr. Howerton recommended plaintiff stop smoking.

Progress notes dated May 8, 2002, report plaintiff wanted her thyroid checked. (Tr. 300). Plaintiff reported she was tired all the time and had decreased energy and concentration. Plaintiff reported she was depressed and had increased stress over money. The examiner noted plaintiff had a normal gait and her extremities showed no signs of clubbing, cyanosis or edema. Plaintiff was diagnosed with malaise with fatigue, depression and tobacco abuse. Plaintiff was given samples of Celexa and instructed to stop smoking.

Progress notes dated June 13, 2002, report plaintiff's complaint that Celexa was not helping with her depression. (Tr. 299). Plaintiff also reported having mood swings and insomnia. Plaintiff reported she was fighting (non physical) with her husband. Plaintiff was diagnosed with depression, anxiety and insomnia. Plaintiff was instructed to discontinue the use of Celexa and to start taking Trazodone.

Progress notes dated June 24, 2002, report plaintiff's complaints of cough and congestion for the past week. (Tr. 298). Plaintiff reported she still smoked. Plaintiff underwent a chest x-ray. (Tr. 325). Plaintiff was diagnosed with bronchitis, cough and COPD.

Progress notes dated July 17, 2002, report plaintiff's complaints of increased depression over the past month. (Tr. 297, 421). Plaintiff reported she smoked two packages of cigarettes a day. Plaintiff reported Trazodone helped her sleep but she was still moody. Plaintiff also complained of a cough with occasional urine incontinence. Plaintiff was diagnosed with insomnia, COPD, tobacco abuse and chronic hoarseness. Plaintiff was referred to an ENT.

AO72A
(Rev. 8/82)

Plaintiff was given a prescription refill for Trazodone and samples of Paxil and Proventil. It was recommended that plaintiff do Kegel exercises and that she discontinue smoking.

Progress notes dated August 16, 2002, indicate Paxil helped decrease plaintiff's crying but she had increased stress. (Tr. 296, 420). Plaintiff reported the Trazodone helped her sleep. The examiner noted plaintiff had not followed up with an ENT regarding her chronic hoarseness and that she continued to smoke. Plaintiff was diagnosed with insomnia, depression, tobacco abuse and chronic hoarseness.

In the latter part of 2002, plaintiff wanted a spot on her nose checked. Plaintiff reported Paxil helped but she needed more help with anxiety.[3] (Tr. 295). Plaintiff denied suicidal or homicidal ideation. The examiner recommended plaintiff stop smoking.

In late 2002 or early 2003, plaintiff reported she could not see an ENT until she had the money. (Tr. 294). Plaintiff complained of GERD symptoms two to three times a week and that Tums did not help. Plaintiff reported she had seen a dermatologist who thought the spot on plaintiff's nose was a ruptured cyst.[4] Plaintiff reported she felt better on Paxil and denied suicidal and homicidal ideation. Plaintiff reported she continued to smoke. Plaintiff was to return in three months

In early 2003, plaintiff reported the spot on her nose was red, open and growing. (Tr. 293) . Plaintiff reported she was still smoking but was trying to cut back. Plaintiff was diagnosed with cellulitis and tobacco abuse. Plaintiff was instructed to return to the dermatologist if the spot did not get better. Plaintiff was instructed to discontinue smoking.

---

[3]There is no date for this progress note. Due to plaintiff's age and information contained in the note, this office visit occurred sometime after August of 2002 but prior to October, 25, 2002.

[4]Progress notes indicate plaintiff saw a dermatologist on October 25, 2002. (Tr. 293, 295).

In early 2003, plaintiff came in for a follow-up for the spot on her nose. (Tr. 292, 419). Plaintiff reported the dermatologist told her it was a cyst. Plaintiff reported doing well with Paxil but noted she still gets depressed but denied suicidal or homicidal ideation. Plaintiff was diagnosed with cellulitis, insomnia, depression and yeast vaginitis. Plaintiff's Paxil was changed to Lexapro and she was given samples of Wellbutrin. Plaintiff was also given over-the-counter lotrimin and samples of Keflex.

### III. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one

year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)- (f). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 404.1520.

### IV.  Discussion:

Plaintiff contends that the ALJ erred in concluding that the plaintiff was not disabled. Specifically, plaintiff alleges that ALJ's analysis as to the evaluation of plaintiff's subjective complaints of pain and credibility was improper, that the ALJ erred in concluding plaintiff maintained an RFC to perform sedentary work; that the ALJ erred in disregarding the opinions

AO72A
(Rev. 8/82)

and findings of plaintiff's primary treating physicians; that the ALJ erred to fully and fairly develop the record; that the ALJ failed to consider all of claimant's impairments both individually and in combination.

### A.     Insured Status:

We must first discuss the relevant time period for the application currently before the court.  In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on December 31, 2002. (Tr. 17). Accordingly, the overreaching issue in this case is the question of whether plaintiff was disabled during the relevant time period of July 15, 2000,[5] her adjusted alleged onset date of disability, through December 31, 2002, the last date she was in insured status under Title II of the Act.

In order for plaintiff to qualify for disability benefits she must prove that, on or before the expiration of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. *Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984). The medical evidence of plaintiff's condition subsequent to the expiration of plaintiff's insured status is relevant only to the extent it helps establish plaintiff's condition before the expiration. *Id. at* 1169.

---

[5] As mentioned above plaintiff filed a previous application that was denied through the reconsideration level. *Rogers v. Chater,* 118 F.3d 600, 601 (8th Cir.1997) (noting a claimant generally cannot seek benefits in a subsequent proceeding for any time-period for which the prior proceeding had denied benefits).

### B. Subjective Complaints:

In disability determinations, credibility assessments are the province of the ALJ. *Onstead v. Sullivan*, 962 F.2d 803, 805 (8th Cir. 1992). This court will not substitute its judgment for that of the trier of fact, *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996), nor will we disturb the decision of any ALJ who seriously considers, but for good reason explicitly discredits, a claimant's testimony of disabling pain. *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003). We believe the ALJ adequately evaluated the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and conclude there is substantial evidence supporting the ALJ's determination that plaintiff's complaints were not fully credible.

The ALJ determined plaintiff's diabetes and hypertension were diagnosed and treated after plaintiff's date last insured and therefore would not be considered a medically determinable impairment with regard to plaintiff's current application for DIB. (Tr. 20). While plaintiff testified she was diagnosed with diabetes sometime in 2000, the medical evidence shows she was diagnosed and underwent clinical trials for diabetes starting in September of 2003, which was nine months after plaintiff's insured status expired. With regard to plaintiff's alleged narcolepsy, fibromyalgia and hand pain there is no indication that plaintiff was treated for these impairments

on a regular and consistent basis during relevant time period. *See Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure seek treatment inconsistent w/allegations of pain).

The medical record shows plaintiff has been diagnosed with COPD and has sought treatment for respiratory problems during the relevant time period. In March of 2001, and June of 2002, plaintiff was diagnosed with bronchitis. In June of 2005, plaintiff underwent pulmonary function tests that suggested moderate restrictive lung disease. The records show plaintiff has also taken Serevent, Proventil and inhaled corticoid steroids to treat her respiratory problems. The medical evidence clearly shows plaintiff has a respiratory impairment; however, it appears plaintiff sought infrequent treatment for her respiratory problems and that this impairment was improved with medication. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th cir. 1999) (impairments amenable to treatment not disabling).

The record also reflects despite numerous recommendations to stop smoking by treating and examining physicians, plaintiff continued to smoke up to a package of cigarettes a day. *Brown v. Barnhart*, 390 F.3d 535, 540-541 (8th Cir. 2004)(citations omitted)("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits."); *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008). At the March 29, 2006, administrative hearing, plaintiff testified she stopped smoking in 2002 and did not start smoking again until about six months prior to the hearing. (Tr. 447). The medical evidence reveals plaintiff reported to her doctors that she was still smoking in March of 2001, May 2002, June 2002, July 2002, August 2002, October 2003, November 2003, January 2004, March 2004, April 2004, June 2004, October 2004, February 2005, March 2005, May 2005, and November

2005. Clearly, had plaintiff's difficulty breathing been as bad as plaintiff claimed she would not have continued to smoke.

The ALJ also addressed plaintiff's allegations that her severe depression, anxiety attacks and memory problems inhibit her from working. The medical evidence reveals that prior to, during and subsequent to the date last insured plaintiff sought treatment for depression. Plaintiff relies on the findings made by Dr. Donna M. Van Kirk in June of 2004, to support her allegations that she has a disabling mental impairment. (Tr. 332). While, Dr. Van Kirk's opinion may show that plaintiff's mental impairment worsened after her insured status expired it does not show plaintiff suffered from disabling depression prior to December 31, 2002. To the contrary, the medical evidence both prior to and during the relevant time period show plaintiff reported medication helped with her depression, hallucinations and inability to sleep. (Tr. 294-297). With regard to plaintiff's memory problems plaintiff testified at the March 29, 2006, hearing that she has had memory problems for the past year which was clearly outside the relevant time period. (Tr. 438). Plaintiff also testified she started having a lot of anxiety attacks over the past couple of years. (Tr. 439). This too would be outside of the relevant time period.[6]

Although plaintiff contends that her failure to seek medical treatment, in particular mental health treatment from a mental health specialist, is excused by her inability to afford treatment, plaintiff has put forth no evidence to show that she has sought low-cost medical treatment or been denied treatment, due to her lack of funds. *Murphy v. Sullivan*, 953 F.3d 383, 386-87 (8th

---

[6] The court would note that while plaintiff's current mental impairments do not provide a basis for remand of the current action, these impairments may provide a basis for filing a new application for supplemental security income benefits if plaintiff meets the earning requirements.

-11-

Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). The record shows the last progress note from Ozark Guidance Center (OGC) on June 5, 2000, indicate plaintiff's treating psychiatrist recommended plaintiff return in two months or sooner if necessary. (Tr. 272). There is no evidence to show OGC refused to see her in August of 2000, or any time thereafter, due to plaintiff's inability to pay. Furthermore, as addressed above, the evidence indicates plaintiff continued to afford to smoke up to a package of cigarettes a day throughout the relevant time period. As such, we cannot say that her financial situation prevented her from receiving medical treatment.

The ALJ also properly addressed plaintiff's daily activities. In a Supplemental Interview Outline dated May 4, 2004, sixteen months after her insured status expired, plaintiff reported she was able to take care of her personal needs, engage in some household chores, prepare five meals a week, drive, walk for errands and exercise or errands, visit friends and relatives, read and crochet. (Tr. 209-213). This level of activity belies plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disability prior to December 31, 2002. *See Hutton v. Apfel*, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability); *See Polaski* at 1322.

With regard to the testimony of plaintiff's husband, the ALJ properly considered his testimony but found it unpersuasive. This determination was within the ALJ's province. *See*

*Siemers v. Shalala*, 47 F.3d 299, 302 (8th Cir. 1995); *Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993).

Therefore, although it is clear that plaintiff suffers with some degree of limitation, she has not established that she was unable to engage in any gainful activity during the relevant time period. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning her daily activities support plaintiff's contention of total disability prior to December 31, 2002. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

**C.     RFC Assessment and Treating Physician Opinion:**

Plaintiff also contends that the ALJ erred in finding that she maintained the RFC to perform sedentary work. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.154599(c), while not limited

-13-

to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question," and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessments of examining agency medical consultants (Tr. 112-124, 140-147, 337-346, 349-357, 360-374), plaintiff's subjective complaints, and her medical records.

Plaintiff argues plaintiff's primary treating physician's, Dr. Donna M. Van Kirk, opinion was improperly discounted. A review fo the record reveals Dr. Van Kirk was a consultative, not treating, physician who saw plaintiff one time at the request of the administration in June of 2004. The ALJ discussed Dr. Van Kirk's opinion and explained how this opinion was not consistent with the evidence as a whole for the relevant time period. *Bentley v. Shalala,* 52 F.3d 784, 787 (8th Cir. 1995) (ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

Based on our above discussion of the medical evidence, plaintiff's failure to seek consistent treatment and plaintiff's daily activities during the relevant time period, we believe substantial evidence supports the ALJ's RFC determination.

**D.   Hypothetical Proposed to Vocational Expert:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, we find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole.

-14-

*See Goff v. Barnhart,* 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that plaintiff's impairments do not preclude her from performing other work as a machine operator and an assembler. *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### E.   Fully and Fairly Develop the Record:

We reject plaintiff's contention that the ALJ failed to fully and fairly develop the record. While an ALJ is required to develop the record fully and fairly even when a claimant has an attorney, *See Freeman v. Apfel,* 208 F.3d 687, 692 (8th Cir.2000) (ALJ only must order consultative examination when it is necessary for an informed decision), the record before the ALJ contained the evidence required to make a full and informed decision regarding plaintiff's capabilities prior to her date last insured. *See Strongson v. Barnhart,* 361 F.3d 1066, 1071-72 (8th Cir.2004) (ALJ must develop record fully and fairly to ensure it includes evidence from treating physician, or at least examining physician, addressing impairments at issue).

### F.   Combination of Impairments:

Finally, plaintiff argues the ALJ failed to properly considered plaintiff's alleged impairments in both individually and in combination is not supported by the record. The ALJ discussed plaintiff's impairments individually and specifically found that plaintiff did not "have an impairment of combination of impairments" that meets or medically equals a listed impairment. *Hajek v. Shalala,* 30 F.3d 89, 92 (8th Cir.1994) (conclusory statement that ALJ did not consider combined effects of impairments was unfounded where ALJ noted each impairment and found that impairments, alone or combined, were not of listing-level severity).

AO72A
(Rev. 8/82)

### V. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 16th day of January 2009.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)